# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. SOUTH KANSAS & OKLAHOMA RAILROAD, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 26-cv-00083-CDL ) |
| 1. COX COMMUNICATIONS, INC., and | ) ) |
| 2. EAGLE 1 RESOURCES, LLC; | ) ) |
| Defendants. | ) ) ) |

## PLAINTIFF'S COMPLAINT FOR DAMAGES AND APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiff South Kansas & Oklahoma Railroad, LLC ("SKOL"), by and through its undersigned counsel of record, alleges as follows in support of its Complaint for Damages and Injunction (the "Complaint") against Defendant Cox Communications, Inc. ("Cox") and Eagle 1 Resources, LLC ("Eagle 1"):

## INTRODUCTORY STATEMENT

This action arises from a dispute concerning the lawful conditions under which a utility company may cross and occupy an active railroad right-of-way and the role of a third-party consultant in asserting and advancing an alleged right to do so without authorization of, or compensation to, the railroad. SKOL owns, operates, and exercises exclusive control over a railroad corridor in Oklahoma. Defendant Cox has numerous license agreements with SKOL for the installation and occupation of utility facilities on and across SKOL property pursuant to which Cox had been, until the last few years, paying

annual license fees (the "Subject License Agreements"). Cox is now in arrears on such agreements in excess of $121,898.66.

Defendant Cox is now also unlawfully asserting a right to install an additional subsurface fiber-optic facility beneath SKOL's railroad corridor, near Copan, Oklahoma under the auspices, and with the assistance, of Defendant Eagle 1 (the "Copan Crossing").

SKOL does not dispute that a common carrier telecommunications utility may generally cross railroad property when such crossings are authorized and governed by appropriate agreements. Indeed, for decades, SKOL has been licensing the use of its railroads for utility crossings to Cox and to other utilities.

Rather, the Parties' dispute concerns two things: (i) whether Cox's failure to pay license fees to SKOL for its continued occupancy of the railroad's property is a breach of the respective Subject License Agreements; and (ii) whether Cox may proceed with the installation of the Copan Crossing (and other similar installations in the future) in the absence of SKOL's consent, without a written crossing or license agreement, without payment of the fees to SKOL, and without compliance with the safety, engineering, and operational requirements that ordinarily govern such installations. Such requirements are necessary to ensure the safety of railroad operations, of employees of the railroad, and of members of the general public.

Defendant Eagle 1 is a firm "providing consultant & management services to the utility industry" according to its website. Cox retained Eagle 1 in connection with the proposed Copan Crossing. In that role, Eagle 1, acting as an agent of Cox, has taken the position that Cox possesses an independent legal right to cross SKOL's railroad corridor

without entering into an agreement or compensating SKOL for the use of its property. Eagle 1 has communicated and advocated that position directly to SKOL and has represented itself as authorized to speak on Cox's behalf regarding the legality of the proposed installation.

Furthermore, it is SKOL's belief and understanding that Cox has discontinued payment under the Subject License Agreements for existing facilities due to the misguided representations and advice of Eagle One.  The dispute before the Court therefore concerns not only Cox's asserted right to proceed without authorization, but also Eagle 1's involvement in promoting, inducing, and maintaining that position and interfering with the Subject License Agreements between SKOL and Cox.

SKOL brings this action to resolve the parties' competing claims regarding access to the railroad right-of-way, remedy Cox's breach of Subject License Agreements, and to obtain declaratory and injunctive relief clarifying that any utility crossing of SKOL's corridor must occur only with SKOL's express written consent and pursuant to a duly executed agreement that addresses compensation, safety, engineering, and operational concerns. Absent such relief, Defendants' asserted position creates a continuing risk of unauthorized entry, interference with railroad operations, interference and breach of the Subject License Agreements, and loss of SKOL's ability to control and protect critical transportation infrastructure.

## PARTIES

1.      Plaintiff SKOL is a Kansas limited liability company with its principal place of business in Kansas.

2.      SKOL is a Class 3 short-line freight railroad company under the regulatory jurisdiction of the federal Surface Transportation Board.

3.      SKOL operates and possesses exclusive control over its freight railroad corridor and right-of-way including the locations at issue in this Complaint.

4.      Upon information and belief, Cox Communications, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia. Cox is a utility provider engaged in installing and operating fiber optic and other telecommunications infrastructure in Oklahoma.

5.      Upon information and belief, Eagle 1 is an Alabama limited liability company with its principal place of business in Auburn, Alabama, with none of its members being citizens of either Kansas or Oklahoma.

6.      Eagle 1 is a self-described strategic utility consultant that advocates for, and advises, utility companies in obtaining, and avoiding having to pay for, crossing rights over railroad corridors.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over the parties because the acts and omissions that gave rise to SKOL's causes of action against Cox and Eagle 1 arose in the State of Oklahoma.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to SKOL's claims occurred within this District, including Defendants' threatened unauthorized installations in Washington County, Oklahoma and Tulsa County, Oklahoma, Defendants' interference with SKOL's railroad operations and contractual rights, and Defendants' centralized course of conduct giving rise to Cox's ongoing breach of its license agreements with SKOL, most of which occurred or were directed into the Northern District of Oklahoma.

10.    This Court has authority to issue declaratory relief under 28 U.S.C. §§ 2201–2202.

## FACTUAL ALLEGATIONS

11.    SKOL maintains exclusive control, management, and possession of its railroad right-of-way and corridor. This includes the right to regulate (subject to the jurisdiction of the Surface Transportation Board and, in certain circumstances, local regulatory agencies) all crossings, installations, aerial, and subsurface uses.

12.    SKOL, like other railroads, requires advance written agreements for any utility crossing to ensure operational safety, engineering compliance, subsurface integrity, and compliance with state and federal regulations.

13.    SKOL requires utilities which intend to install utility facilities on or under its railroad corridor to submit an application with detailed plans of the utility installation. This process allows SKOL to review the proposed installation to determine if the installation process is consistent with appliable safety and engineering standards.

14.     SKOL also requires a flagger to be present at all times that work is being completed on or under the railroad corridor to protect the workers completing the installation, as well as SKOL's employees and members of the public as part of its process for a utility to install its facility on or under SKOL property.  Indeed, many of the utility crossing occur near railroad intersections with public highways.

15.     In addition to a flagger, SKOL requires an on-site construction monitor, to oversee the work of the utility installer to ensure the work is completed in a safe manner and consistent with the plans which were provided and in a manner to reduce the risk of damage to SKOL's operating corridor and to the installer on the utility facility.

16.     The on-site construction monitor also identifies the location at which the utility facility is installed.  This information is then updated by SKOL to its mapping system to allow it and its contractors to understand where utility facilities are located.  By knowing the location of the installed utility facility, SKOL can safely complete maintenance and other activities on its operating corridor and protect the utility facility that is installed on or under the operating corridor, as well as the end-users and customers of the facility.

17.     SKOL and Cox have worked in the past through this utility installation process. SKOL and Cox are currently parties to the Subject License Agreements, which allow Cox to install, maintain, and operate certain utility facilities on and across SKOL's railroad corridor in exchange for payment of a periodic license fee, as set forth in each of the Subject License Agreements.  Attached hereto as Exhibits 1-12, respectively, are copies of each of the Subject License Agreements between SKOL and Cox.

18.     Cox previously made payments under the Subject License Agreements attached hereto and still maintains utility facilities on or under SKOL's property pursuant to the Subject License Agreements.

19.     Beginning within the last five years, COX ceased making the required payments due for the Subject License Agreements. Cox currently owes SKOL $121,898.66 under the Subject License Agreements.

20.     Cox, through Eagle 1, is imminently planning to install the Copan Crossing across SKOL's railroad corridor at Milepost 32.47.  The location of the proposed Copan Crossing is approximately 10-15 feet south of the southerly edge of a private roadway that crosses the corridor.

21.     Cox has not submitted an acceptable crossing agreement, has not obtained permission from SKOL for the Copan Crossing, and has not agreed to terms governing licensing fees, nor liability insurance, engineering review, or restoration obligations which are critical to SKOL's continued safe operations in its operating freight rail corridor in Washington County, Oklahoma.

22.     On November 26, 2025, Eagle 1, on Cox's behalf, issued a written communication to SKOL asserting, among other things:

    a.  That Cox "may make this installation without paying any crossing fees to SKOL."

    b.  That Cox may install facilities "without paying any other fees" and without a license agreement.

      c.   That the SKOL right-of-way constitutes "public access" and that crossing it requires no permission.

      d.   That Cox intends to begin installation on or about January 25, 2026, 60 days from the date of the letter.

23.    These assertions made by Eagle One on behalf of Cox are incorrect, misleading, and inconsistent with Oklahoma law, federal law, and the property rights vested in SKOL.

24.    It appears through Eagle 1's communications that Cox is continuing preparation for the installation of the Copan Crossing and remains poised to unlawfully enter SKOL's property without permission and without the cooperation and coordination of SKOL.

25.    Unauthorized boring beneath an active railroad corridor presents serious safety, structural, operational, and regulatory risks.

26.    In addition to the Copan Crossing, SKOL has recently received numerous other communications from Eagle 1 on Cox's behalf regarding other utility crossings of the SKOL corridor and making the same meritless claims about Cox's right to install its facilities without payment to, and cooperation with, SKOL.

27.    On more than one prior occasion, contractors under the auspices of Eagle 1, and on behalf of Cox and other telecommunications companies, have entered upon railroad property and installed – without permission – telecommunications facilities on SKOL property and on other railroad property owned and operated by SKOL's parent company, Watco.

28.     Unauthorized installations pose an imminent threat to SKOL employees and to the public.  Part of SKOL's process for the installation of utility facilities is to have authorized personnel on site to oversee the installation and to identify any potential safety issues that arise during the installation and to protect those involved during the installation process.  Moreover, these personnel are able to identify the exact location of the installation so SKOL is aware of the location of the facility so it can safely conduct future maintenance work in and around the area of the installation.  This allows SKOL to protect the installed utility facility and protect SKOL's facilities in the area of the installation, as well as the end users of the facility. If installation occurs without authorized personnel on site SKOL is irreparably harmed by not having this information regarding the installation.  Without knowledge SKOL has to either conduct its work without knowledge of the location of the installed utility facility or must undertake an extensive investigation prior to completing any work in its corridor.

29.     The risk of irreparable harm to SKOL in the absence of its prior approval and monitoring of utility installations is clear and serious. For example, in one recent case in the City of Wayland, Michigan, Eagle 1 affiliated contractors entered upon the railroad property of the Grand Elk Railroad, a Watco-owned short-line, dug a six-foot deep bore hole just five feet away from the Grand Elk tracks, deposited spoils of the hole onto the tracks, and proceeded to install a fiber-optic facility across and beneath the Grand Elk railroad corridor.  All of this was done without permission from Watco.  The installation deviated from plans submitted to Watco and threatened to derail trains on this active rail

corridor.  These actions of the utility installer caused Grand Elk Railroad to immediately cease operation when the railroad identified this unauthorized installation.

30.    Unfortunately, these types of incidents are becoming all too common. In Wichita, Kansas, an unauthorized utility installer damaged signal cables when installing a utility facility and caused a traffic control signal to fail at a public crossing on another Watco railroad.  Thankfully the crossing arms dropped due to the failure of the signal, but this also stopped all automobile traffic at the crossing until the signal cables could be repaired.

31.    SKOL has its utility installation process in place to try to prevent these types of situations or, if these situations occur, SKOL will have a its representatives  already on scene to immediately respond and handle the situation as quickly as possible to protect all people involved in the installation, SKOL employees, and the travelling public.

32.    Any unpermitted entry constitutes trespass and irreparable harm because the railroad's exclusive right to control its operating corridor is paramount to its ability to safely operate trains and protect its employees and those working on and around the railroad corridor. As demonstrated by the above examples, failure to closely coordinate utility installations with railroads, and to abide by their well-established and critical engineering and safety standards, gravely risks the safety of SKOL employees, members of general public, and the contractors performing the unauthorized work, as well as the integrity of the railroad corridor, and risks substantial damage to locomotives, rolling stock, and the freight being carried by SKOL.

33.    Given these critical imminent threats to personal safety, personal and real property, monetary damages cannot adequately compensate for the risks posed by unauthorized subsurface and aerial work near the active railroad infrastructure.

## COUNT I – BREACH OF CONTRACT

34.    SKOL hereby realleges and incorporates the foregoing paragraphs as though fully alleged herein.

35.    COX entered into the Subject License Agreements with SKOL for the installation of utility facilities on SKOL's property and they remain in full force and effect until such time as they are terminated and Cox removes its utility facilities from SKOL's property.

36.    Cox previously made timely payments under the Subject License Agreements but has failed to pay the fees which it agreed to pay under the Subject License Agreements for as much as the last five years.

37.    Cox currently owes SKOL $121,898.66, plus applicable fees related to the enforcement of these agreements including but not limited to attorney's fees and costs and interest under the Subject License Agreements.

## COUNT II – DECLARATORY JUDGMENT

38.    SKOL hereby realleges and incorporates the foregoing paragraphs as though fully alleged herein.

39.    An actual immediate controversy exists concerning Cox's asserted right to enter, occupy, and install facilities within or beneath SKOL's railroad right-of-way without

SKOL's express written authorization, without compliance with SKOL's approval process, and without payment of the fees required for use of SKOL's property.

40.    SKOL seeks a declaration that:

    a.  Cox has no right to enter or occupy SKOL's right-of-way, surface or subsurface, without SKOL's consent;

    b.  SKOL's property is not dedicated to public use, nor is it a public highway, for purposes of utility installations by third parties;

    c.  Any installation without a license or other property right constitutes trespass;

    d.  Cox must obtain SKOL's express written consent, in the form of an executed crossing or license agreement or other written authorization, before undertaking any installation within or beneath SKOL's railroad right-of-way;

    e.  Cox must pay license fees, as determined by SKOL, for the right to install, maintain, and operate telecommunications and related facilities on SKOL railroad property; and

    f.  Eagle 1's assertions are legally incorrect and created SKOL's necessity to file this action.

## COUNT III – INTENTIONAL INTERFERENCE WITH PROPERY RIGHTS AND BUSINESS RELATIONS

41.    SKOL hereby realleges and incorporates the foregoing paragraphs as though fully alleged herein.

42.    SKOL has exclusive possessory rights to its railroad corridor.

43.     SKOL has a contractual relationship with Cox as evidenced by the Subject License Agreements.

44.     SKOL has an ongoing business relationship with Cox for the use of its railroad corridor for Cox's utility facilities.

45.     Eagle 1 intentionally interfered with SKOL's property rights and business and contractual relationship by:

   a.  Advising Cox it had the right to enter SKOL's property without permission,

   b.  Encouraging installation of telecommunications facilities without the consent of, or written agreement with, SKOL,

   c.  Misrepresenting the legal status of the railroad property,

   d.  Aiding and abetting Cox in its unlawful use of SKOL's property and abuse of its permitting requirements.

46.     Cox has acted, and continues to act, upon Eagle 1's inducement.

47.     Eagle One's interference is unauthorized, intentional, and without legal justification.

48.     SKOL has incurred damages from Eagle 1's action including but not limited to increased costs related to maintaining its railroad corridor, increased expenses incurred to protect its railroad corridor, administrative costs associated with Eagle 1's demands, the costs associated with this lawsuit, and Cox's failure to pay license fees under existing License Agreements including but not limited to the Subject License Agreements and other related costs.

## COUNT IV – AIDING AND ABETTING TRESPASS / CIVIL CONSPIRACY

49.    SKOL hereby realleges and incorporates the foregoing paragraphs as though fully alleged herein.

50.    Eagle 1 knowingly encouraged Cox to enter, or to cause contractors and others to enter SKOL's property without authority.

51.    Eagle 1's conduct constitutes participation in, and inducement of, an unlawful trespass.

52.    Eagle 1's objective, by its own published materials, includes eliminating railroad crossing fees and bypassing railroad approval processes.

53.    SKOL has incurred damages from Eagle's action including but not limited to increased costs related to maintain its railroad corridor, increased expenses to protect its railroad corridor, administrative cost associated with Eagle 1's demands, the costs associated with this lawsuit, and Cox's failure to pay license fees under existing License Agreements including but not limited to the Subject License Agreements and other related costs.

WHEREFORE, Plaintiff, SKOL, respectfully requests that this Court enter judgment in its favor and against Defendants on Counts I-IV, and grant the following relief:

-    Monetary damages that SKOL has incurred as a result of Defendants' action as outlined above in Counts I-IV in the amount in excess of $75,000.00;

-    The reasonable costs and attorneys' fees incurred in bringing this action to the extent permitted by applicable law;

-    An award of pre-judgement and post judgment interest; and

14

- For such other and further relief as the Court may deem to be just and proper.

## COUNT V – PRELIMINARY INJUNCTION

54.    Plaintiff SKOL hereby realleges and incorporates by reference the foregoing paragraphs as though fully alleged herein.

55.    Fed. R. Civ. P. 65 allows for a party to seek a preliminary injunction.

56.    "To obtain a preliminary injunction, plaintiff must establish: (1) a substantial likelihood that it will eventually prevail on the merits; (2); irreparable injury unless the preliminary injunction issues; (3) that the threatened injury outweighs whatever damage the proposed preliminary injunction may cause defendants; and (4) that the preliminary injunction, if issued, will not be adverse to the public interest." *Site Rite Construction Co. v. City of Lansing, Kansas*, No. 19-2011-KHV, 2019 WL 216844, at *1 (D. Kan. Jan. 16, 2019) (citing *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986)).

57.    As discussed above, SKOL has set forth sufficient evidence to meet all four elements of the claim because:

  a.  There is substantial evidence that Defendants are violating SKOL's right-of-way with the unauthorized Copan Crossing;

  b.  SKOL will suffer irreparable harm absent injunctive relief, including loss of exclusive control over its railroad corridor, interference with railroad operations, and increased safety and regulatory risks associated with unauthorized subsurface activity beneath an active rail line;

c.  The balance of equities favors SKOL, as Defendants will suffer no cognizable hardship from being required to comply with lawful crossing procedures and obtain proper authorization before proceeding, while SKOL faces substantial and irreparable harm if Defendants are permitted to proceed without consent; and

d.  This injunction is clearly in the public interest to ensure that railroad operations remain safe and intact and continue to service public and private interests in the State of Oklahoma.

58.  A preliminary injunction is necessary to maintain the status quo and prevent Defendants from engaging in unauthorized entry or construction activities during the pendency of this action.

WHEREFORE, SKOL respectfully requests that the Court grant SKOL's request for a Preliminary Injunction in Count V as follows:

-  Grant SKOL a Preliminary Injunction enjoining Defendants, their agents, contractors, consultants, and all persons acting in concert with them from entering upon, excavating, boring beneath, installing facilities within, or otherwise interfering with SKOL's railroad right-of-way absent SKOL's express written consent and a duly executed crossing agreement;

-  Enjoin Defendants from asserting or acting upon any claimed right to install facilities within or beneath SKOL's railroad corridor without authorization; and

-  Grant SKOL all other appropriate declaratory, injunctive, and prospective relief regarding the unlawful acts and practices of Defendants; and

- Grant SKOL such other and further legal and equitable relief as this Court deems just and proper, including costs and attorneys' fees to the maximum extent allowed by law.

## COUNT VI – PERMANENT INJUNCTION

59. Plaintiff SKOL hereby realleges and incorporates by reference the foregoing paragraphs as though fully alleged herein.

60.     Fed. R. Civ. P. 65 allows for a party to request and be issued a permanent injunction after a final ruling on the merits.

   a. To obtain a permanent injunction, SKOL must establish: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Schell v. OXY USA, Inc.*, 822 F. Supp. 2d 1125, 1141-42 (D. Kan. 2011).

   b. Upon final adjudication, SKOL will be entitled to permanent injunctive relief because:

   a. Defendants have asserted and acted upon an alleged, but legally infirm, right to enter and occupy SKOL's railroad right-of-way without authorization, in violation of SKOL's exclusive property rights;

   b. Absent a permanent injunction, SKOL faces a substantial likelihood of recurring and continuing violations of its property and possessory interests;

c.  Monetary damages are inadequate to remedy the loss of exclusive control, safety risks, and operational interference posed by unauthorized crossings of an active railroad corridor; and

d.  The public interest favors permanent injunctive relief to ensure safe railroad operations and lawful use of transportation infrastructure.

c.  Unless permanently enjoined, Defendants will continue to assert and act upon an alleged, but legally infirm, right to enter SKOL's railroad corridor without consent, creating a substantial risk of future unauthorized intrusions.

WHEREFORE, SKOL respectfully requests that the Court grant SKOL's request for a Permanent Injunction in Count VI as follows:

-  Grant SKOL a Permanent Injunction restraining Defendants, their agents, contractors, consultants, and all persons acting in concert with them from entering upon, excavating, boring beneath, installing facilities within, or otherwise interfering with SKOL's railroad right-of-way except pursuant to SKOL's express written consent and a duly executed crossing or license agreement that includes payment of the applicable fees and compliance with all safety, engineering, insurance, and operational requirements;

-  Permanently enjoin Defendants from inducing, encouraging, or asserting any claimed right to occupy or cross SKOL's railroad corridor without first obtaining SKOL's written permission and executing an appropriate agreement governing such crossing;

- Grant SKOL all other appropriate declaratory, injunctive, and prospective relief regarding the unlawful acts and practices of Defendants; and

- Grant SKOL such other and further legal and equitable relief as this Court deems just and proper, including costs and attorneys' fees to the maximum extent allowed by law.

### JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), SKOL hereby demands a trial by jury on all claims and issues so triable in its Complaint.

Respectfully submitted,

*s/Lance C. Cook*
Lance C. Cook, OBA #21143
DEWITT, PARUOLO & MEEK, PLLC
P.O. Box 138800
Oklahoma City, OK  73113
Telephone: (405) 705-3600
Facsimile: (405) 705-2573
lcook@46legal.com
***Attorney for Plaintiff South Kansas &
Oklahoma Railroad, LLC***